## UNITED STATES v. TARCUANU.

District Court, S. D. New York.

Feb. 5, 1935.

Martin Conboy and Malcolm A. Crusius, both of New York City, for the United States.

Leo Singer, of Brooklyn, N. Y., for defendant.

BONDY, District Judge.

This is a motion for an order vacating service of the summons in a civil action on the ground that the defendant is a duly accredited vice consul, and in charge of the Royal Consulate General of the kingdom of Roumania, in the city of New York. As the summons was served without a complaint, the nature of the action does not appear.

"Consuls, as such, and unless expressly invested with a diplomatic character in addition to their ordinary powers, are not considered as intrusted with authority to represent their sovereign in his intercourse with foreign states, or to vindicate his prerogatives, or entitled by the law of nations to the privileges and immunities of ambassadors or public ministers, but are subject to the jurisdiction, civil and criminal, of the courts of the country in which they reside." United States v. Wong Kim Ark, 169 U. S. 649, 678, 18 S. Ct. 456, 468, 42 L. Ed. 890.

The defendant relies on article 2 of the Consular Convention between the United States and Roumania, concluded June 17, 1881 (23 Stat. 711). It provides: "The consuls-general, consuls, vice-consuls and consular agents of each of the two high contracting parties shall enjoy reciprocally in the States of the other, all the privileges, exemptions and immunities that are enjoyed by officers of the same rank and quality of the most favored nation."

Article 2 of the Consular Convention between the United States and France, concluded February 23, 1853 (10 Stat. 993) provides: "The consuls general, consuls, vice-consuls or consular agents of the United States and France, shall enjoy in the two countries the privileges usually accorded to their offices, such as personal immunity, except in the case of crime. * * *"

None of the authorities cited by the defendant decided that consuls are not subject to the jurisdiction of our courts. In Wilson v. Blanco, 56 N. Y. Super. 582, 4 N. Y. S. 714, the defendant was an am-

bassador, and in Herman v. Apetz, 130 Misc. 618, 224 N. Y. S. 389, the defendant was the wife of the secretary of a legation. In Moracchini v. Moracchini, 126 Misc. 443, 213 N. Y. S. 168, the court assumed that the Convention of 1853 with France relieves French consuls from civil liability, but held that a chancellor was not entitled to such immunity.

In Froment v. Duclos (D. C.) 30 F. 385, the Austrian vice consul did not claim immunity notwithstanding that the Consular Convention of 1870 with Austria likewise granted to Austrian consuls personal immunity except in case of crime.

In the absence of authorities it may be noted that commentators on the subject hold that the Consular Convention with France does not grant any immunity from the civil jurisdiction of our courts. Stewart, Consular Privileges and Immunities, p. 154, states that there are no treaties of the United States which relieve a consul from liability to suit. See Moore, Digest of International Law, vol. 5, p. 63.

In 1856 the Attorney General expressed the opinion (8 Op. Attys. Gen. 169, 170) that under the Consular Convention of 1853 with France consuls of the two countries are placed respectively "on the footing of the most enlarged and liberal view of consular functions and rights," citing De Clercq et De Vallat, Guide Pratique des Consulats, liv. 1, ch. 1, No. 4 (1850).

De Clercq et De Vallat (1898 Ed.), using the same words "personal immunity," assert that consuls of other nations in France enjoy personal immunity and cannot be arrested or imprisoned except for acts which French legislation makes criminal and punishes as such. But they also state that such consuls are subject to the jurisdiction of French courts, unless their official position as consul is involved. Guide Pratique (1898 Ed.) liv. 1, ch. 1, No. 4, p. 11.

The same authors discussing the Convention of 1853 with the United States and other treaties state that they are complemented by the laws of each country, and that the law of the United States with respect to privileges of consular officers is like that of England. Pages 10, 13.

It is well settled that consular officers are amenable to the civil jurisdiction of the British courts. See Barbuit's Case, Cas. t. Talbot 280 (1737).

The Consular Convention of 1853 is 82 years old. The treaty does not clearly or

expressly grant consular officers complete immunity. There is no reason at this time for construing "personal immunity except in case of crime" to mean more than immunity from arrest and imprisonment except in case of crime.

The motion accordingly is denied, without prejudice however to the defendant's right to question the service of the summons in his dwelling. See article 3 of the Convention of 1853 with France (10 Stat. 994); Stewart, supra, p. 82; Hyde, International Law, § 474. The defendant not having raised this point, the court refrains from acting thereon in view of the suggestion by the authorities that consuls should not take advantage of this immunity to deprive local courts of jurisdiction. See Stewart, supra, p. 82; Hyde, supra, § 474.